IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEWART NOZETTE, Ph.D. )<br>)<br>and )<br>)<br>ALLIANCE FOR COMPETITIVE )<br>TECHNOLOGY, INC. )<br>         Petitioners, )<br>)<br>v. )<br>)<br>NATIONAL AERONAUTICS AND SPACE )<br>ADMINISTRATION, OFFICE OF )<br>INSPECTOR GENERAL, )<br>)<br>)<br>         Respondent. )<br>_____) | C.A. No.: 06-MC-00171-JR<br><br>Opposition to Petitioner's Motion to<br>Quash Administrative Subpoena<br>*Duces Tecum* and for Protective Order |

## NASA'S OPPOSITION TO PETITIONER'S MOTION TO QUASH ADMINISTRATIVE SUBPOENA *DECUS TECUM* AND FOR PROTECTIVE ORDER

On March 20, 2006, NASA's Office of Inspector General ("OIG") served an Inspector General Subpoena on Bank of America requiring the production of bank records associated with an account held by Alliance for Competitive Technology, Inc. ("ACT"). (See Bank of America Subpoena, attached as Exhibit A). ACT is a non-profit corporation owned by Dr. Stewart Nozette and his wife, Wendy McColough. (See Declaration of Special Agent Anthony J. Pavlik, attached as Exhibit B).

In February of 2004, ACT entered into an Intergovernmental Personnel Act ("IPA") agreement with NASA, which obligates NASA to reimburse ACT for Dr. Nozette's salary and ACT's share of Dr. Nozette's employee benefits, actually incurred, up to an amount not to exceed forty percent of his base salary. An investigation has been initiated to determine whether ACT actually incurred the expenses for Dr. Nozette's salary and employee benefits it purported to incur.

RECEIVED
MAY -3 2006
NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

Pavlik Decl. ¶ 4. A preliminary review of ACT's 2004 tax return suggests that these expenses were not actually incurred, as the return lists salary expenses of only $16,302 and payroll taxes of $1,777. Pavlik Decl. ¶ 5. Additionally, ACT also charged NASA for fringe benefits relating to the Federal Unemployment Tax Act (FUTA) and Maryland Unemployment Insurance when ACT was exempt from paying FUTA, and the Maryland Department of Labor, Licensing and Regulation (DLLR) had no record of ACT or Nozette. Id.

The Bank of America subpoena was issued in accordance with the Inspector General Act of 1978, 5 U.S.C. app.3. The subpoena requires the production of ACT bank records for the period January 1, 2000 to January 31, 2006. See Exhibit A. Although the ACT's IPA agreement with NASA covers only the period March 2004 to March 2006, ACT has entered into virtually identical IPA agreements with other government agencies for the past six years, and the records during the entire time period are relevant to show, among other things, a past pattern or practice. Pavlik Decl. ¶ 8. The subpoena did not require production of Dr. Stewart Nozette's personal bank records. Pavlik Decl. ¶ 9.

On April 13, 2006, Dr. Nozette and ACT filed a motion to quash the Bank of America subpoena. In their Motion, Dr. Nozette and ACT argue that the subpoena should be quashed because it is over broad, it seeks confidential information, and it is not being used for a proper purpose by NASA-OIG because "there is no question of any fraud." See ACT Motion, at 5-7.

As more fully set out below, Dr. Nozette and ACT have no privacy rights in, nor ownership of, the records sought from Bank of America and, therefore, no standing to challenge the subpoena. Although the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401, would offer some statutory protection to Dr. Nozette, individually, if NASA sought his customer records, the statute affords no privacy rights to corporations such as ACT. Moreover, even if ACT had standing to

- 2 -

challenge the subpoena, NASA-OIG has acted appropriately within its statutorily imposed duties and has not issued the subpoena for any dubious reason, as ACT suggests. Accordingly, the Motion to Quash should be denied and this miscellaneous action should be dismissed.

## DISCUSSION

The Inspector General Act of 1978 (the "Act"), as amended, creates independent Inspectors General in NASA and other federal agencies, who are responsible for overseeing the integrity of agency programs and the conduct of agency contractors and other recipients of agency funds. See 5 U.S.C. app. 3 § 1 et seq.; Burlington Northern R.R. Co. v. Office of Inspector Gen., R.R. Retirement Bd., 983 F.2d 631, 634-35 (5th Cir. 1993); Adair v. Rose Law Firm, 867 F. Supp. 1111, 1115 (D.C.D.C. 1994). Under the Act, the duties of the Inspector General of NASA include: (i) preventing and detecting fraud and abuse in NASA's programs and operations, 5 U.S.C. app. 3 § 4(a)(3); (ii) conducting, supervising, and coordinating audits and investigations relating to NASA's programs and operations, id. § 4(a)(1); (iii) helping identify and prosecute those participating in defrauding NASA's programs, id. § 4(a)(4)(B); and (iv) identifying deficiencies in the administration of NASA's programs and recommending corrective action, id. § 4(a)(5).

To enable the Inspector General to carry out these statutory duties and responsibilities, the Act expressly confers upon the Inspector General broad subpoena power:

> In addition to the authority otherwise provided by this Act, each Inspector General, in carrying out the provisions of this Act, is authorized--* * * to require by subpoena [sic] the production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence necessary in the performance of the functions assigned by this Act...

Id. § 6(a)(4); see also Burlington Northern, 983 F.2d at 641 ("[T]he Inspector General Act of 1978 gives Inspectors General broad--not limited-- investigatory powers.") (emphasis in original).

### A. Dr. Nozette and ACT lack standing to challenge a subpoena issued to a third party

In United States v. Miller, 425 U.S. 435 (1976), the Supreme Court ruled that there is no legitimate expectation of privacy in bank records in possession of a bank because documents and other materials are voluntarily conveyed to banks and exposed to bank employees in the ordinary course of business. See, 425 U.S. at 438-442. In response to the Miller decision, Congress enacted the RFPA, 12 U.S.C. §3401 et seq., which permits customers who are individuals to contest Government access to certain records held by banks and other financial institutions, as defined by the statute, and requires the Government authority to notify the bank customer of the subpoena or summons served on the financial institution as well as the nature of the law enforcement inquiry to which the subpoena or summons relates. The application of the RFPA is expressly limited to natural persons or partnerships of five or fewer persons. See 12 U.S.C. §3401(4). See also *Construction and Application of the Right to Financial Privacy Act of 1978*, 112 A.L.R. Fed. 295 (1993).

Thus, ACT has no right to object to the bank records sought because corporations are not covered by the RFPA. Accordingly, ACT has no standing to challenge the subpoena. Additionally, Dr. Nozette has no privacy rights in the bank records sought because the subpoena does not require the production of his personal records. Thus, he too lacks standing to challenge the subpoena.

### B. Even if subject to challenge, the Bank of America subpoena is a valid and legitimate exercise of NASA-OIG's authority

Even if Dr. Nozette and/or ACT had standing to challenge the subpoena, the issuance of this subpoena is not, as Dr. Nozette and ACT suggest, over broad and is not designed solely for the purpose of harassment or to serve as a fishing expedition. See ACT Motion, at 7. The subpoena was issued by NASA-OIG pursuant to an investigation into allegations that ACT submitted false statements/claims for expenses that were not actually incurred. Pavlik Decl. ¶ 4. This investigation

falls squarely within the Inspector General's express authority under the Inspector General Act to investigate fraud, waste, and abuse in the administration's programs and operations, 5 U.S.C. app. 3 § 4 (a) (3). The subpoena requests information reasonably related to the Inspector General's investigation. Because investigatory subpoenas "must by their very nature be broad," it is not for the reviewing court to determine whether the information sought is relevant to whatever eventual action the agency might take. United States v. Firestone Tire & Rubber Co., 455 F. Supp. 1072, 1083 (D.D.C. 1978). The court's inquiry is limited to whether the requested information, "however broad," is relevant to the "general purpose" of the investigation. Id. Here, the subpoena seeks documents that go directly to the question of whether ACT's claims were valid and truthful and whether ACT had a pattern and practice of submitting like claims or making like statements under past IPA's with Government agencies. Pavlik Decl. ¶ 9.

In particular, the information sought by the subpoena would assist in verifying ACT's expenses for Dr. Nozette's salary and benefits reimbursed by NASA, and whether such expenses were actually incurred. For example, if ACT incurred health insurance expenses for Dr. Nozette, ACT bank records would presumably reflect those expenses. Moreover, ACT's attorney has represented that Dr. Nozette is paid in-kind rather than in salary. (See Exhibit C, Letter from ACT attorney Kiyonaga, dated February 7, 2006.) An analysis of the subpoenaed documents would enable NASA OIG to determine the truth of that assertion, and whether the historical expenses that ACT incurred over time have any semblance to the salary negotiated by ACT in its IPA agreement with NASA. Production, therefore, would advance the investigation to its logical conclusion, rather than the delay sought by ACT's counsel.

## CONCLUSION

For the foregoing reasons, the NASA-OIG respectfully requests that the Court deny Dr. Nozette and ACT's Motion to Quash and dismiss this miscellaneous action.

Respectfully submitted,

PETER KEISLER
Assistant Attorney General

MICHAEL F. HERTZ
MICHAEL D. GRANSTON
(D.C. Bar No. 446258)
RYAN P. FAYHEE
Attorneys, Civil Division
United States Dept. of Justice
601 D Street, NW, Rm. 9607
Washington, D.C. 20004
Tel: (202) 307-0240, Fax: (202) 305-7797

Dated: May 3, 2006          ATTORNEYS FOR THE UNITED STATES