

EXHIBIT B

DECLARATION OF ANTHONY J. PAVLIK
SPECIAL AGENT, OFFICE OF INSPECTOR GENERAL
GODDARD SPACE FLIGHT CENTER
NATIONAL AERONAUTICS AND SPACE ADMINISTRATION

I, Anthony J. Pavlik, hereby declare as follows:

(1)     I am a criminal investigator in the Office of Inspector General (OIG) of the National Aeronautics and Space Administration (NASA), Goddard Space Flight Center, Greenbelt, MD. The following statement is based upon personal knowledge acquired in the performance of my official duties and is submitted in support of an action opposing Petitioners' motion to quash an administrative subpoena issued by the NASA Inspector General and served upon the Bank of America.

(2)     As a special agent, I plan and conduct investigations primarily involving fraud committed by NASA employees and contractors. I have over 14 years experience conducting a variety of white collar fraud investigations in multiple federal agencies. I am currently conducting a criminal investigation involving violations of 18 U.S.C §287, false, fictitious or fraudulent claims.

(3)     By virtue of the Inspector General Act of 1978 (the Act), as amended, the Inspector General (IG) of NASA has the duty and responsibility"... to conduct, supervise, and coordinate audits and investigations relating to the programs and operations of {NASA}." 5 U.S.C. App. 4(a) (1). Pursuant to section 6 of the Act, NASA IG has authority to issue subpoenas for "the production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence necessary in the performance of the functions assigned by this Act." 5 U.S.C. App. (6) (a) (4). I am familiar with the procedures followed in the NASA OIG for requesting, issuing, and serving subpoenas and specifically in regards to the subpoena to the Bank of America.

(4)     On January 17, 2006, this investigation was initiated based on information that the ACT, a non-profit corporation owned by Dr. Stewart Nozette as the president and his wife, Wendy McColough, as the director, may have submitted false claims to NASA and the Department of Defense. In February 2004, ACT entered into an Intergovernmental Personnel Act (IPA) agreement with NASA, for the period March 1, 2004 to February 28, 2006, which stipulated that NASA will "reimburse" ACT for Nozette's salary of $141,718 and ACT's share of Nozette's employee benefits up to 40% of his base salary, and that ACT agrees to continue to pay Dr. Nozette's salary and benefits, and make his payroll deductions.

(5)     Preliminary investigation disclosed that ACT submitted potential false claims to NASA when it invoiced NASA for reimbursement for the salary and an additional 40% for fringe benefits and expenses it allegedly paid to Nozette, when according to ACT's federal income tax returns, these expenses were not fully paid. For example, in 2004

ACT's tax returns showed salary expenses of only $16,302 and payroll taxes of $1,777. ACT also charged NASA for fringe benefits relating to the Federal Unemployment Tax Act (FUTA) and Maryland Unemployment Insurance when ACT was exempt from paying FUTA, and the Maryland Department of Labor, Licensing and Regulation (DLLR) had no record of ACT or Nozette. Even if ACT was self-insured it was nonetheless required to report all employee wages to the State of Maryland, which was not done.

(6)    In response to a NASA OIG subpoena served on ACT on January 27, 2006, Nozette's attorney, John Kiyonaga, wrote a letter to the NASA IG Robert Cobb. With the letter, he provided two months' worth of ACT's checking account statements and copies of checks.

(7)    My review of the ACT bank statements provided for November and December 2005 revealed that for that time period, NASA paid ACT $53,388. However, no checks were written to Nozette, nor were any checks written to the US Department of Treasury for FICA taxes or other payroll taxes. The checks written from ACT's business account indicated numerous payments for apparent personal expenses including utilities, three different mortgages, nine credit cards, La Jolla Tennis Club, Mercedes Benz Credit Corp, and pool cleaning.

(8)    In addition to the IPA agreement with NASA, Nozette had two additional IPA agreements, one with the Navy Research Laboratory (NRL) from January 13, 2000, to January 12, 2002, and one with the Defense Advanced Research Projects Agency (DARPA) from March 18, 2002, to March 17, 2004. ACT also had at least one employee, Michael Abrams, who worked under another IPA agreement between ACT and NRL from December 5, 2001 to December 4, 2003. Based on my review of ACT's federal tax returns, a similar pattern of alleged fraudulent activity occurred in connection with these agreements. In fact, I compared ACT's invoices to the NRL for Michael Abrams' IPA agreement and information provided by Abrams. The agreement called for the NRL to reimburse ACT for Abrams' salary and fringe benefits. Based on my analysis, I believe that ACT had requested reimbursement from the NRL for over $50,000 in fringe benefits and salary that it had not incurred nor provided to Abrams per the IPA agreement.

(9)    On March 17, 2006, the NASA Deputy Inspector General, Thomas J. Howard, signed a NASA Office of Inspector General Subpoena to the Bank of America, which I served on March 20, 2006. (Exhibit A). The subpoena was required to obtain ACT's business checking account records to verify financial transactions and expenses relating to the IPA agreements between ACT and various federal agencies including NASA. The subpoena did not require production of Nozette's personal records. I had requested these records for a period of time beginning in January 2000, which correlated to the start of ACT's alleged fraudulent activity and continued through the end of ACT's IPA agreement with NASA.

(10)   On April 18, 2006, I received a copy of ACT and Nozette's Motion to Quash the NASA IG subpoena to Bank of America, along with a copy of a letter dated April 14, 2006, written by Mr. Kiyonaga to the Bank of America (Exhibit D).

(11)   On April 26, 2006, I received a letter from Bank of America, dated April 19, 2006, which stated that the bank has "discontinued production of the documents requested in your subpoena pending our receipt of court ordered instruction signed by the judge presiding over the Motion to Quash hearing and/or further instruction signed by you *and* the opposing party." (emphasis in original) (Exhibit E).

(12)   To date, no documents have been received in compliance with the subpoena.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  May 3, 2006 , at Greenbelt, Maryland.

Anthony J. Pavlik
Special Agent
Office of Inspector General
National Aeronautics and Space Administration
Goddard Space Flight Center
Greenbelt, Maryland