LAW OFFICE
# JOHN C. KIYONAGA
526 KING STREET, SUITE 213
ALEXANDRIA, VIRGINIA 22314

ALSO ADMITTED DC AND NY BARS

(703) 739-0009
FAX (703) 549-2988



EXHIBIT C

February 7, 2006

Robert W. Cobb
Inspector General
National Aeronautics and Space Administration
300 E St., SW
Washington, D.C. 20546

Re: Dr. Stewart D. Nozette

Dear Mr. Cobb:

As counsel for Dr. Nozette, I was served on January 27 with a subpoena *duces tecum* by SA Anthony Pavlik. I read neither the Intergovernmental Personnel Act ("IPA") nor NASA's Assignment Agreement under the IPA with the Alliance for Competitive Technology ("ACT"), pursuant to which Dr. Nozette serves at NASA, to entitle NASA to the documents subject of the subpoena. Nonetheless, I have attached ACT's bank statements and checks for the last two months of 2005.

As an organization devoted to the promotion and transfer of technology and the reduction of the burden of government, and accorded tax-exempt status under Sec. 501(c)(3), ACT provides Dr. Nozette to NASA. ACT's outlays reflected in the attached checks comprise expenses directly incurred by Dr. Nozette in service to NASA (e.g. travel and entertainment), expenses incurred in the maintenance of ACT's situs which is also Dr. Nozette's home (e.g. mortgage, telephone, utilities and internet access), and checks for a vehicle lease and insurance for Dr. Nozette. ACT's monthly outlays over the life of its agreement with NASA have not been identical, but the aggregate of the outlays well exceeds amounts invoiced to NASA (which can be confirmed as to 2004 by reference to ACT's publicly filed IRS Form 990; the Form 990 as to 2005 is not yet due).

While none of the enclosed checks reflect "salary" payments directly to Dr. Nozette, many reflect in kind compensation. A review of fully burdened contracts by NASA under the Federal Acquisitions Regulation in supplement of IPA agreements for the acquisition of similar personnel should reveal that the cost to NASA under its agreement with ACT and the compensation enjoyed by Dr. Nozette are more than reasonable for a scientist of his stature in the field of aeronautics and space exploration.

Mr. Nozette's service to NASA under ACT's Assignment Agreement is easily confirmed from NASA's records. The breadth of documentation subpoenaed,

Robert W. Cobb
February 7, 2006
Page 2

however, exceeds NASA's authority under 42 U.S.C. Sec. 4764(b) to review "the status and application of Federal grant funds and the operation of the training program..." Review of issues such as the classification and reporting of Dr. Nozette's compensation are properly the province of the Internal Revenue Service. It bears noting, however, that ACT's mission and Dr. Nozette's professional pursuits are virtually congruent, as distinct from a non-profit managed by an administrator not directly performing the non-profit's mission. Consequently, ACT funds spent for the benefit of Dr. Nozette can and are considered spent for the benefit of ACT and largely tax exempt. *See Universal Church of Scientific Truth v. United States*, (N.D. Ala.)(Sept. 25, 1973). Further, the IRS prefers payment of expenses to outsize salary payments for organizations with ACT's total revenue. *Id.*

You are free to disagree with this position and to report it to the IRS if you choose, but it remains an issue outside the enforcement purview of NASA. It is not an appropriate basis for adverse action by NASA against ACT or Dr. Nozette, particularly since he has been described within NASA as an effective "change agent."

I am confident Dr. Nozette's senior management concurs that NASA receives very good value under the agreement. Dr. Nozette would very much like NASA to renew its agreement with ACT so that he can continue his work without interruption. His senior management should confirm that this is their wish as well. Consequently, I would ask that you close the investigation of Dr. Nozette without more.

I understand that NASA insisted on the language parsing ACT's expenses viz Dr. Nozette in the Assignment Agreement with ACT. I am unaware of any statutory or regulatory requirement for parsing ACT's expenses in its agreement with NASA and would suggest the parties negotiate a contract renewal for a sum certain plus allowable mission expenses.

Should you have any concerns not resolved by this letter, I would be happy to meet with you.

Thank you.

Sincerely,

John C. Kiyonaga

Cc: Michael C. Wholley, Esq.