# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEWART D. NOZETTE, Ph.D.** ) | |
| ) | |
| and ) | |
| ) | |
| **ALLIANCE FOR COMPETITIVE** ) | |
| **TECHNOLOGY, INC.** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No, : 06-MC-00171-JR |
| ) | |
| **NATIONAL AERONAUTICS AND** ) | |
| **SPACE ADMINISTRATION/** ) | |
| **OFFICE OF INSPECTOR GENERAL,** ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

### PLAINTIFFS' REPLY TO NASA'S OPPOSITION TO PLAINTIFFS' MOTION TO QUASH ADMINISTRATIVE SUBPOENA *DUCES TECUM* AND FOR PROTECTIVE ORDER

NASA-OIG makes three basic points in its Opposition: 1) Plaintiffs have no standing to challenge the subject subpoena; 2) the documents sought are reasonably relevant to NASA-OIG's investigation because they may show a "pattern and practice" of allegedly fraudulent conduct by Plaintiffs; and 3) NASA-OIG's investigation is not being conducted for any improper or illegitimate purpose that would vitiate the subpoena. Each argument is unavailing.

**ARGUMENT**

    I.    <u>Plaintiffs Clearly Have Standing to Challenge the Subject Subpoena</u>

NASA-OIG would have this Court understand that the Alliance for Competitive Technology, Inc. ("ACT") has no standing to challenge a subpoena seeking records from its <u>*own bank account*</u> because ACT does not fall within the specific parameters of the Right to Privacy Financial Act ("RFPA"), 12 U.S.C. §§ 3401 -3422 (1989). Notably, NASA-OIG cites no case for its proposition that the RFPA confers the sole basis for a corporation to challenge an administrative subpoena for its bank records.

While the RFPA does grant protections against the disclosure of bank records maintained by individuals or certain partnerships, *see* 12 U.S.C. §§ 3401(4),(5), it does not constitute the only basis upon which a third party can challenge a subpoena for bank records. Even a third party has standing to challenge an administrative subpoena that infringes upon its legitimate interests, especially where, as here, an agency has abused its powers by issuing a subpoena that is overbroad, abusive or otherwise improper. *See, e.g.*, *United States v. Segal*, 276 F.Supp.2d 896, 900 (N.D. Ill. 2003)(finding government had standing to quash subpoena served on law firm that represented potential government witnesses, as government had "legitimate interest" in protecting such witnesses from harassment). Indeed, the "persistent theme running through the [Supreme] Court's decisions … is that an administrative summons can be challenged 'on any appropriate ground.'" <u>S.E.C. v. Wheeling-Pittsburgh Steel Corp.</u>, 648 F.2d 118, 124 (3d Cir. 1981(<u>en banc</u>), <u>quoting</u> <u>Reisman v. Caplin</u>, 375 U.S. 440 (1964). As such, both ACT and Dr. Nozette, in his capacity as president of ACT, have an obvious and legitimate interest in ACT's financial records at Bank of America.

NASA-OIG's position also raises the disturbing prospect of unchecked abuse by an agency of its subpoena powers.  By its logic, NASA-OIG could serve an administrative subpoena on the bank account of a corporation with no connection whatsoever to this investigation – say, an IBM account at Citibank – and that corporation, not protected by the RFPA, would have no recourse to challenge such a wholly-improper and abusive subpoena in court.  The RFPA and related case law do not somehow divest federal courts of their authority to prevent abuses of an agency's subpoena power.  *In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000)("The value of constraining government power . . . is [ ] recognized in the judicial supervision of subpoenas") .  *See also State ex. rel. Hoover v. Berger*, 483 S.E.2d 12 (W.Va. 1996)(for administrative subpoena *duces tecum*, test of reasonableness is decided by balancing government's need for requested information against other party's right to be free from government intrusion).  "It is the Court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *United States v. Powell*, 379 U.S. 48, 58 (1964).  And the law – be it the RFPA or federal common law – does not somehow relieve an agency of its obligation to conduct inquiries that are proper in their purpose and to seek information that is relevant to that purpose.

    II.    <u>The Subject Subpoena Should Not Be Enforced Because The Documents Sought Are Not Reasonably Relevant To NASA/OIG's Investigation</u>

The subject subpoena seeks all financial information from the ACT account at Bank of America for a period of over *six years*, from January 1, 2000 – January 31, 2006, even though ACT only provided services to NASA for two years, from March 2004 to March 2006.  The subpoena, as written, is not limited to financial documents relating to ACT's services for NASA – it encompasses financial documents relating to *any* ACT clients, including private entities.  *See* Mot. to Quash at 3-4.  Moreover, such documents would reveal information regarding services

that ACT has provided on a strictly confidential basis, services that frequently relate to sensitive proprietary interests of the private entities as well as issues of national security. *Id*. at 6. If ever a subpoena constituted a "fishing expedition," this is it. *See., e.g., United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984)(requesting entire files instead of specific documents indicates "fishing expedition").

NASA-OIG nevertheless argues that the subpoena is appropriately broad because such documents may help show an alleged "pattern and practice" of financial misconduct by ACT. Govt. Opp. at 5. NASA-OIG's strained rationale for this overbroad subpoena does not suffice: information on the ACT's financial dealings with other entities, such as private corporations or government entities, has no bearing on whether the subject IPA agreement somehow caused loss or waste to NASA, the proclaimed subject of NASA-OIG's investigation. Accordingly, these documents are excessive, per NASA-OIG's stated purposes, and beyond the scope of permissive inquiry. *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 209 (1946). *See also* Fed. R. Civ. P 26(b)(1) (limiting discovery to matters that are "relevant to the claim or defense of any party"). Indeed, the very language of the Inspector General Act of 1974 that authorizes the issuance of subpoenas specifies that such subpoenas must seek information that is "necessary" for the agency's functions – not information of speculative relevance or information that is, from the agency's perspective, somehow desirable to review. *See* Inspector General Act of 1978, 5 U.S.C.A. App. 3 § 6(a)(4)(authorizing subpoena for necessary documentary evidence). *See also Segal*, 276 F.Supp.2d 896 (N.D. Ill. 2003)(quashing subpoena on ground, *inter alia*, that documents sought were of only speculative relevance).

III. The Subject Subpoena Should Not Be Enforced Because It Was Issued For An Improper Purpose

For a subpoena to be enforceable, it must have be part of a legitimate underlying inquiry. *United States v. Powell*, 379 U.S. 48, 51 (1964)(administrative subpoena must not be enforced if subpoena was "issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation."); *In re Subpoena Duces Tecum*, 228 F.3d at 349 (federal administrative subpoena may only be used for legitimate and authorized governmental purpose); *United States v. Firestone Tire & Rubber Co.*, 455 F. Supp. 1072 (D.D.C. 1978)(same). But the context and course of this entire investigation smacks of bad faith. As set forth in Plaintiffs' Motion, the subject subpoena is clearly part of an ongoing, groundless and retributive effort by NASA to discredit, harass and malign Dr. Nozette and ACT: NASA-OIG has, *inter alia*, suspended his security clearance without adequate basis or notice; has communicated discrediting information to his current supervisor; has refused to renew his contract with NASA and refused to pay for services rendered; and, most recently, has served this manifestly-overbroad subpoena *duces tecum* for confidential financial records. *See* Mot. to Quash at 2-4. *In re Subpoena Duces Tecum*, 228 F.3d at 349 (requirement that administrative subpoena be used only for a legitimate and authorized governmental purpose prohibits the government from engaging in arbitrary fishing expeditions and from selecting targets of investigation out of malice or an intent to harass). *See also* Fed. R. Civ. P. 26(c) (permitting court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order that the requested discovery not be had).

NASA-OIG's Opposition provides yet more indication that the subject investigation and subpoena are improperly motivated. First, the Opposition does not even address Plaintiffs'

-5-

allegations that the subject investigation and subpoena are improperly motivated. In February 2005, Dr. Nozette exposed the presence of a convicted felon, Thomas Jasin, among NASA's upper echelons, an unpopular – and, for NASA, embarrassing – disclosure that was reported in the national media. *See The Washington Post*, February 11, 2005 at A23. The attached emails (Exhibit 1) reflect Dr. Nozette's initiative in uncovering this official's criminal past. Mr. Jasin's eventual removal from NASA occasioned considerable turmoil within the agency. Not surprisingly, NASA-OIG's reputed concerns regarding ACT's salaries, expenses or other financial outlays were raised only *after* Dr. Nozette's efforts to uncover this damaging information. Significantly, NASA-OIG's Opposition does not contain a declaration from the Inspector General or his deputy (who authorized the issuance of the subpoena) denying any improper motivation behind the investigation of Dr. Nozette or ACT.

Second, it appears that NASA-OIG is improperly using the subject administrative subpoena to investigate alleged criminal matters. In his Declaration, Special Agent Pavlik identifies himself as a "criminal investigator" and asserts that he is "currently conducting a criminal investigation." Govt. Opp., Exh. B at ¶¶ 1-2. Given this statement and his role at NASA-OIG, it stands to reason that the subject administrative subpoena is being used (without justification) to conduct a criminal investigation. An administrative summons cannot be used for the purpose of conducting a criminal investigation, *United States v. Kordel*, 397 U.S. 1 (1970), yet further indication that this investigation is improperly motivated. *Cf. United States v. Medic House, Inc.*, 736 F. Supp. 1531, 1535 (W.D. Mo. 1989)(Office of Inspector General of Department of Health could issue administrative subpoena with principle purpose of conducting *civil* investigation of fraud, even if matter had been referral for criminal investigation). At a

minimum, it is important to inquire further into the true nature and purpose of NASA-OIG's investigation of ACT/Dr. Nozette.[1]

Third, NASA-OIG has trammeled upon Dr. Nozette's privacy interests in conducting its investigation – a fact that is, once again, indicative of the NASA-OIG's overzealousness and of the improper motivations for the investigation. For example, Samuel Simpkins, an agent of NASA-OIG, contacted Dr. Nozette's current supervisor at the Department of the Navy, Dr. Christopher Lichtenberg, in April 2006 to inform him that an "investigation" (for unspecified misconduct) was being conducted of Dr. Nozette. *See* Mot. to Quash at 3. Yet this same agent, in his letter to Bank of America accompanying the subject subpoena, states: "This investigation is private and we request such privacy be maintained. Enclosed herewith is a notice pursuant to the Privacy Act of 1974." *See* NASA-OIG. Opp., Exh. A at 2. Agent Simpkin's blatant failure to abide by him own admonition – to keep the investigation private – reveals the abusive nature of this subpoena and gives rise to a potential claim of a violation of the Privacy Act of 1974.

---

[1] Accordingly, Plaintiffs have filed contemporaneously herewith, a motion seeking leave of the Court to serve certain limited discovery requests on NASA or, in the alternative, for a limited evidentiary hearing before the Court regarding the purpose and nature of the instant investigation.

## CONCLUSION

**WHEREFORE**, Plaintiffs Stewart D. Nozette, Ph.D. and Alliance for Competitive Technology, Inc. respectfully request that this Court quash the subject subpoena and issue an appropriate protective order.

Respectfully submitted,

KIYONAGA & SOLTIS, P.C.

/s/  Paul Y. Kiyonaga

_____

Paul Y. Kiyonaga
D.C. Bar No. 428-624
910 Seventeenth St., N.W.
Suite 800
Washington, D.C. 20006
Tel. No. (202) 363-2776
Fax No. (202) 363-2749

John C. Kiyonaga
D.C. Bar No. 424858
526 King Street
Alexandria, VA 22314
Te. No. (703) 739-0009
Fax No. (703) 549-2988
*Of Counsel to Plaintiffs*

May 15, 2006